UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 24-cv-1037 (RDM/GMH) |
| ATCO MASONRY LLC, | ) ) ) |
| Defendant. | ) ) ) |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This is a delinquent pension contributions case brought by the Bricklayers & Trowel Trades International Pension Fund ("Plaintiff") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*[1] Plaintiff, a multiemployer employee benefit plan organized under the provisions of ERISA, alleges that Atco Masonry LLC ("Defendant"), an Illinois limited liability company, failed to pay pension contributions as required by its collective bargaining agreement with the International Union of Bricklayers and Allied Craftworkers Local Union No. 8 Illinois. It did not answer the complaint in this matter and is now in default.

Upon consideration of Plaintiff's complaint, motion for default judgment, and the supporting affidavits and documentary evidence,[2] the undersigned **RECOMMENDS** that Plaintiff's

---

[1] Judge Randolph D. Moss referred this matter to the undersigned for full case management pursuant to Local Civil Rule 72.2(a). *See* Minute Order (Oct. 17, 2024).

[2] The relevant docket entries for the purposes of this Report and Recommendation are: (1) Plaintiff's Complaint, ECF No. 1; (2) Plaintiff's Motion for Default Judgment, ECF No. 8; (3) Plaintiff's Memorandum in Support of the Motion for Default Judgment, ECF No. 8-1; (4) Declaration of Lester W. Kauffman III and accompanying exhibits, ECF No. 8-2 at 3–37; (5) Declaration of Charles Gilligan and accompanying exhibits, ECF No. 8-2 at 38–45; and (6) Plaintiff's response to the order of the Court requesting supplemental information, and accompanying exhibits, ECF Nos. 12, 12-1, 12-2, and 13. The page numbers cited herein are those assigned by the Court's CM/ECF system.

motion for default judgment be **GRANTED** in the amount of $179,810.30, comprising $118,155.81 for contributions and dues owed for work performed from July 2023 through October 2023; $3,359.27 in interest calculated at the contract rate of 15% per annum from the due date of each monthly unpaid contribution payment to December 2023; $23,631.16 in liquidated damages calculated at a rate of 20% of the delinquent contributions; and $44,664.06 for unpaid contributions on work performed from April 2022 through November 2022; less $10,000.00 for contributions made by Defendant pursuant to a 2023 Memorandum of Understanding between the parties. Further, the undersigned **RECOMMENDS** that Plaintiff's request for attorney's fees and costs, totaling $4,640.50, be **GRANTED**. As such, the undersigned **RECOMMENDS** that judgment be entered against Defendant in the total amount of $184,450.80, covering damages and attorney's fees and costs. Additionally, the undersigned **RECOMMENDS** that equitable relief be **GRANTED** under 29 U.S.C. § 1132(g)(2)(E) in the form of ordering Defendant (1) to submit to an audit of its payroll records; and (2) to submit all outstanding remittance reports and contributions for the months of March 2024 to July 2024.

## I.   BACKGROUND

Plaintiff is the Bricklayers & Trowel Trades International Pension Fund ("International Pension Fund" or "IPF"), an employee pension benefit plan as defined in Section 3(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1), by and through its Board of Trustees. ECF No. 1 at 1–2. The IPF is authorized to file suit on behalf of its beneficiaries, including—as relevant here—the International Masonry Institute ("IMI"), the Bricklayers and Allied Craftworkers International Health Fund ("IHF"), the fringe benefit funds located within the jurisdictions of International Union of Bricklayers and Allied Craftworkers Local Union Nos. 8 Illinois and 79 Illinois, and within the jurisdiction of former Local Union Nos. 3 Illinois, 5

Illinois, 6 Illinois, 7 Illinois, and 11 Illinois ("Local Funds"; collectively with IPF, IMI, and IHF, "Funds"), and the International Union of Bricklayers & Allied Craftworkers ("BAC"). *Id.* at 2. IPF brings this suit on behalf of itself, the beneficiary Funds, and BAC, alleging that Defendant has failed to pay certain sums of money owed to the Funds and BAC pursuant to a collective bargaining agreement. *Id.* at 3–4.

Defendant is Atco Masonry LLC, an Illinois limited liability company and an "employer in an industry affecting commerce" as defined in Sections 3(5), (11), and (12) of ERISA, 29 U.S.C. §§ 1002(5), (11), and (12). *Id*. at 2. For all relevant periods, Defendant has been bound by a collective bargaining agreement with the International Union of Bricklayers and Allied Craftworkers Local Union No. 8 Illinois (the "Collective Bargaining Agreement"). *Id*. at 3. The Collective Bargaining Agreement governs the wages, benefits, and terms and conditions of employment for certain employees performing work for Defendant, within the relevant jurisdiction.[3] *Id.* It requires Defendant to submit monthly remittance reports and to pay corresponding monthly sums to the Funds and BAC for hours worked by employees of the Defendant while performing work covered by the Collective Bargaining Agreement. *Id.*

From April 2022 through the present, Defendant's employees performed work covered by the Collective Bargaining Agreement. *Id.* From April 2022 through November 2022 and July 2023 through October 2023, Defendant reported but failed to pay all contributions owed to Plaintiff for work covered by the Collective Bargaining Agreement. *Id.* at 3–4. From December 2023

---

[3] The Collective Bargaining Agreement applies to work performed by employees of Atco Masonry LLC "in the counties in the State of Illinois within the jurisdiction of BAC Local Union No. 8 Illinois, including the counties within the jurisdiction of former BAC Local Union No. 5 Illinois." ECF No. 1 at 3. Additionally, a "Traveling Employer" provision of the Collective Bargaining Agreement "extends [its] coverage . . . to areas outside Local 8 Illinois' jurisdiction to any areas covered by agreements with other affiliates of the International Union of Bricklayers and Allied Craftworkers, including the areas within the jurisdiction of Bricklayers Local Union No. 79 Illinois and within the jurisdiction of former BAC Local Union Nos. 3 Illinois, 6 Illinois, 7 Illinois, and 11 Illinois." *Id.*

3

through the present, Defendant has failed to submit any remittance reports or pay any contributions. *Id.* at 4.

Defendant and Plaintiff entered a Memorandum of Understanding in June 2023 ("June 2023 MOU") acknowledging Defendant's failure to pay all contributions owed for the period between April 2022 through November 2022 and establishing a payment plan. *See* ECF No 8-2 at 32.[4] Defendant and Plaintiff entered another Memorandum of Understanding in December 2023 ("December 2023 MOU") acknowledging Defendant's failure to pay all contributions owed for the period between July 2023 through October 2023 and establishing a payment plan. *See id.* at 33. At the time the December 2023 MOU was executed, Defendant had an outstanding balance of $44,663.37 from the June 2023 MOU. *Id.* at 32. This outstanding balance was included in the December 2023 MOU payment plan. *Id.* at 34–35. Additionally, the December 2023 MOU acknowledged Defendant owed $118,115.81 in contributions for the period between July 2023 through October 2023; $3,359.27 in interest; and $23,631.16 in liquidated damages. *Id.* at 33. Plaintiff alleges, and the MOU states, that the absolute total due at that time was $189, 810.61.[5] *Id.*

Plaintiff alleges that Defendant made one partial payment of $10,000.00 pursuant to the December 2023 MOU but has not made any other payment since. ECF No. 1 at 6. As such, Plaintiff argues it is owed $179,810.61 in unpaid contributions. *Id.* at 8.

On April 11, 2024, Plaintiff filed its complaint against Defendant. ECF No. 1. Defendant was served on April 17, 2024, *see* ECF No. 4, but failed to file an Answer or otherwise respond to

---

[4] The June 2023 MOU is not in the record but is referenced in the December 2023 MOU. *See* ECF No. 8-2 at 32; *see also* ECF No. 12 at 4.

[5] As noted in footnotes 6 and 7, *infra*, these numbers are those Plaintiff alleges are due, but do not precisely mirror the undersigned's calculation of damages.

4

the suit.  As such, at Plaintiff's request, the Clerk entered default against Defendant pursuant to Federal Rule of Civil Procedure 55(a) for Defendant's failure to plead or otherwise defend this action.  *See* ECF Nos. 5, 6.  Thereafter, Plaintiff filed this Motion for Default Judgment, seeking damages, including attorney's fees and costs, and equitable relief.  *See* ECF Nos. 8, 8-1.  As noted, Plaintiff requests $179,810.61 in damages and $4,640.50 in attorney's fees and costs, for a total of $184,451.11.  ECF No. 8-1 at 22, 31; *see* also ECF 12 at 6.  Plaintiff also requests equitable relief in the form of an order requiring Defendant to (1) submit to an audit, ECF No. 8-1 at 6–7; and (2) submit all outstanding remittance reports and contributions from March 2024 through July 2024, *id.* at 23.  Because Plaintiff's Motion for Default Judgment and supporting exhibits did not contain all the information needed to assess its claim for damages, the undersigned ordered it to provide the Court with supplemental information.  *See* ECF No. 9.  Plaintiff obliged, *see* ECF Nos. 12, 13, and this Report & Recommendation follows.

## II.     LEGAL STANDARD

A default judgment is normally available where "'the adversary process has been halted because of an essentially unresponsive party.'"  *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).  Obtaining a default judgment requires two steps.  *Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*, 962 F. Supp. 2d 152, 161 (D.D.C. 2013).  First, the plaintiff must request that the Clerk of the Court enter default against a party who has "failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  Second, the plaintiff must move for entry of a default judgment.  Fed. R. Civ. P. 55(b).  "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint."  *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011).  That is, where the complaint pleads sufficient allegations to make out a

5

cause of action, "the clerk's entry of default alone is enough to establish the defendant's liability." *Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 35 (D.D.C. 2014); *see also, e.g.*, *SEIU Nat'l Indus. Pension Fund v. ABC Window Cleaning Co.*, 278 F. Supp. 3d 455, 458 (D.D.C. 2017) ("The Clerk of Court has already entered defendant's default, so the factual allegations in the complaint are therefore taken as true."). However, "unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001).

### III.  DISCUSSION

For the reasons explained herein, Plaintiff is entitled to the relief requested. The undersigned recommends granting damages totaling $179,810.30, as well as reasonable attorney's fees and costs of $4,640.50, and the requested equitable relief.

### A.  The Court has Jurisdiction over Defendant and Venue is Proper in this District.

As a threshold matter, the procedural posture of a default does not relieve a federal court of its "affirmative obligation" to determine whether it has subject matter jurisdiction over an action. *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996). Here, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case is brought pursuant to ERISA, a federal statute. *See, e.g.*, *Gambino v. Radiant Elec., LLC*, No. 17-cv-10034, 2017 WL 6544823, at *2 (D. Mass. Dec. 21, 2017) (finding, on plaintiff's motion for default judgment, that the court had subject matter jurisdiction over plaintiff's ERISA claims "pursuant to 28 U.S.C. § 1331" because ERISA is a federal statute); *see also, e.g.*, *SEIU Nat'l Indus. Pension Fund v. Tnuzeg Holdings, LLC*, No. 17-cv-1655, 2018 WL 3962925, at *4 n.1 (D.D.C. Aug. 17, 2018) (citing 28 U.S.C. § 1331 as a basis for subject matter jurisdiction over an ERISA claim to collect delinquent benefit fund contributions). Further, ERISA specifically provides for jurisdiction in

the federal district courts. *See, e.g.*, *Tnuzeg Holdings*, 2018 WL 3962925, at *4 n.1 ("Under Sections 502(e) and (f) of ERISA, federal courts have jurisdiction to review ERISA claims.").

Likewise, the Court has personal jurisdiction over Defendant and venue is proper in this district. ERISA's venue provision, 29 U.S.C. § 1132(e)(2), specifies that venue is proper in ERISA cases "in the district where the plan is administered." 29 U.S.C. § 1132(e)(2). The IPF is administered in Washington D.C. ECF No. 1 at 1. As such, venue is proper. Further, "ERISA's venue provision has been interpreted to authorize nationwide service of process." *SEIU Nat'l Indus. Pension Fund v. Liberty House Nursing Home of Jersey City, Inc.*, 232 F. Supp. 3d 69, 75 (D.D.C. 2017) (internal quotation marks omitted) (quoting *Mazzarino v. Prudential Ins. Co. of Am.*, 955 F. Supp. 2d 24, 28 (D.D.C. 2013)); *see also* 29 U.S.C. § 1132(e)(2). Where a federal statute authorizes nationwide service of process, "minimum contacts with the United States suffice" to confer personal jurisdiction. *SEC v. Bilzerian*, 378 F.3d 1100, 1106 n.8 (D.C. Cir. 2004); *see also SEIU Health and Welfare Fund v. N. Am. Cleaning Servs. Co.*, 264 F. Supp. 3d 1, 4 (D.D.C. 2016). Defendant is an Illinois limited liability company that transacts business in Illinois. ECF No. 1 at 2; ECF No. 8-1 at 8. Thus, the minimum contacts threshold is cleared. *See Flynn v. Ohio Bldg. Restoration, Inc.*, 260 F. Supp. 2d 156, 173 (D.D.C. 2003) (finding minimum contacts where the defendant corporation was "a citizen of the United States"); *see also Crabtree v. Overcash Pipeline LLC*, No. 20-cv-1506, 2021 WL 6753416, at *3 (D.D.C. June 7, 2021) (finding, in an ERISA default judgment action, that the court had personal jurisdiction over a corporation which was "headquartered in and maintain[ed] a mailing address in North Carolina"), *report and recommendation adopted*, 2021 WL 6753415 (D.D.C. Sept. 29, 2021).

### B. Defendant is Liable to Plaintiff for Unpaid Pension Contributions

For purposes of determining liability on a motion for default judgment, the Court takes the factual allegations of the complaint as true. *See, e.g.*, *ABC Window Cleaning Co.*, 278 F. Supp. 3d at 458 ("The Clerk of Court has already entered defendant's default, so the factual allegations in the complaint are therefore taken as true."); *Boland v. Smith & Rogers Constr. Ltd.*, 201 F. Supp. 3d 144, 147 (D.D.C. 2016) ("Because the Clerk of the Court has entered default and [the defendant] has failed to respond, the Court accepts Plaintiffs' well-pleaded allegations . . . ."). "ERISA requires employers to make contributions to multiemployer plans 'in accordance with the terms and conditions of' the relevant collective-bargaining agreements." *Smith & Rogers Constr.*, 201 F. Supp. 3d at 147–48 (quoting 29 U.S.C. § 1145). Obligations to make pension contributions can also flow from other agreements between the bargaining parties, including memoranda of understanding. *See, e.g.*, *Ill. State Painters Welfare Fund v. N & R Painting Co.*, No. 09-cv-3042, 2010 WL 3463882, at *1 (C.D. Ill. Aug. 27, 2010) (noting that, "[p]ursuant to the Memorandum of Understanding and Collective Bargaining Agreement, the [d]efendants agreed to make contributions to the [p]laintiffs for the benefit of their employees").

Here, both the governing Collective Bargaining Agreement, ECF No. 8-2 at 21–30, and the December 2023 MOU, ECF No. 8-2 at 31–37, obligate Defendant to make monthly contributions to the Fund. Article XXI, Section 2 of the Collective Bargaining Agreement specifies the monthly contributions that shall be paid to IPF. *See* ECF No. 8-2 at 25–26. Section 3 specifies the monthly contributions that shall be paid to the Local Funds. *Id.* at 26. Section 5 specifies the monthly contributions that shall be paid to IMI. *Id.* And Section 8 specifies the monthly contributions that shall be paid to BAC. *Id.* at 27. Defendant further acknowledged these obligations in entering the December 2023 MOU. *See id.* at 32–33 (confirming the agreement between

8

Defendant the Funds and acknowledging Defendant's obligation to pay the Funds $145,146.244); *see also* ECF Nos. 12-1 and 12-2 (providing an in-depth breakdown of the monthly contribution rates due to each beneficiary of the collective bargaining agreements for the months of April 2022 through November 2022 and July 2023 through October 2023).

Where, as here, "there is a complete absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied." *Providence Constr.*, 304 F.R.D. at 36 (quoting *Fanning v. Permanent Sol. Indus., Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009)). In this case, Defendant has failed to respond to the complaint, Plaintiff's request for default, the Clerk Office's entry of default, or Plaintiff's motion for default judgment. ECF No. 8-1 at 6. Accordingly, the undersigned recommends that default judgment be entered against Defendant. *See Providence Constr.*, 304 F.R.D. at 36 (concluding that the plaintiffs were entitled to default judgment in an ERISA delinquent contributions actions where, as here, the defendant "failed to respond to the complaint, to the [plaintiffs'] affidavit for default, to the Clerk's Office's entry of default, or to the [plaintiffs'] motion for default judgment").

    **C.**    **Plaintiff is Entitled to $179,810.30 in Damages for Unpaid Contributions**

Count I of Plaintiff's complaint seeks damages for Defendant's failure to comply with its contractual and statutory duty to make contributions under the terms of the Collective Bargaining Agreement, the Funds' Restated Agreements and Declarations of Trust, and Section 515 of ERISA, 29 U.S.C. § 1145, as further memorialized by the parties' December 2023 MOU. ECF No. 1 at 5–7. ERISA provides that an employer obligated to make contributions to a multiemployer plan under the terms of a collective bargaining agreement must make those contributions in accordance with the terms and conditions of the agreement. 29 U.S.C. § 1145. Under the terms

of the Collective Bargaining Agreement and 29 U.S.C. § 1132(a), if judgment in favor of the plan is awarded, the Court must award the plan:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
>> (i) interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Interest is determined using the rate provided for by the plan, or if none is set out in the plan, a statutory rate. *Id.* Here, the rate of interest established in the plan is 15% per annum. ECF No. 8-2 at 13. Additionally, liquidated damages are assessed at 20% of the delinquent contributions pursuant to the Collective Bargaining Agreement. *Id.*

In deciding Plaintiff's damages, "the court is required to make an independent determination of the sum to be awarded." *Adkins*, 180 F. Supp. 2d at 17. Plaintiff "must prove these damages to a reasonable certainty," *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 68, and to that end, "may offer 'detailed affidavits or documentary evidence' on which the Court may rely." *Fanning v. AMF Mech. Corp.*, 326 F.R.D. 11, 14 (D.D.C. 2018) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002)). The Court may conduct a hearing regarding the scope of damages, Fed. R. Civ. P. 55(b)(2), but is not required to do so if the affidavits and evidence supporting the motion are sufficiently detailed. *Buckley v.*

*Paperboy Ventures*, *LLC*, 869 F. Supp. 2d 9, 11 (D.D.C. 2012); *see also R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30 (observing that an evidentiary hearing may not be necessary if damages can "be calculated with relative simplicity"). Here, no hearing is necessary because Plaintiff has supplied sufficiently "detailed affidavits [and] documentary evidence" to allow the undersigned to independently assess "the appropriate sum for the default judgment." *Flynn v. Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 69 (D.D.C. 2002). Specifically, Plaintiff provided a declaration from its Executive Director, Laster W. Kauffman III, ECF No. 8-2 at 3–10; the General Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers (the "Collection Procedures"), *id*. at 11–15; relevant portions of the Amendment to the Amended and Restated Agreement and Declaration of Trust, *id*. at 16–20; relevant portions of the Collective Bargaining Agreements, *id*. at 21–30; and the December 2023 MOU, *id*. at 31–37. Additionally, pursuant to the undersigned's order requiring Plaintiff to submit supplementary information, ECF No. 9, Plaintiff submitted an additional brief in response, ECF No. 12; a second declaration from Lester W. Kauffman III, ECF No. 12-1 at 1–2; internal "Settlement Sheets" detailing the hours worked by covered employees on each covered jobsite and the funds to be paid and corresponding contribution rates for the months of April 2022 through November 2022, *see id.* at 4–76; "Settlement Sheets" for the months of July 2023 through October 2023, *see id.* at 78–107; and an Appendix containing charts that further detail Plaintiffs calculations of contributions due and damages owed, *see* ECF No. 12-2.

Based on the evidence provided, the undersigned has made an independent determination that Plaintiff is entitled to $44,664.06 for unpaid contributions for the months of April 2022 through November 2022.[6] This accounts for the total unpaid contributions for this period,

---

[6] In its review of the evidence submitted, the undersigned discovered a minor miscalculation in Plaintiff's requested damages for unpaid contributions due for this time period. Specifically, Plaintiff miscalculated the contributions owed

payments made by Defendants from November 2022 through July 2023, and liquidated damages established pursuant to multiple Memorandums of Understanding between the parties. *See* ECF No. 12 at 2–4. Additionally, Plaintiff is entitled to $118, 155.81[7] in unpaid contributions for the months of July 2023 through October 2023. *See id.* at 4–5; ECF 12-2 at 52–53, 55, 57, 59, 61, 63, 65, 67, 69, 71, 73, 75, and 77; ECF No. 12-1 at 78–79, 85–86, 93–94, and 101–107. Plaintiff is also entitled liquidated damages on the unpaid contributions from July 2023 through October 2023, totaling $23,631.16[8]. *See* ECF No. 12 at 5–6; ECF No. 8-2 at 13.

Finally, Plaintiff is entitled to interest on the unpaid contributions from July 2023 through October 2023 at the rate of 15% per annum from the due date of each monthly unpaid contribution up to the date of judgment. *See* ECF No. 12 at 3 n.2, 5; ECF No. 8-1 at 18; ECF No. 8-2 at 13. The undersigned recommends that the Court find that Plaintiff is due $3,359.27 in interest pursuant

---

to it on behalf of the Joint Apprentice Training Committee – Local 8 Illinois ("JATC"). *See* ECF No. 12 at 3; ECF No. 12-2 at 39. Plaintiff calculates that it is owed $102.92 on behalf of this Fund for the months from July 2022 through November 2022. *See* ECF No. 12-2 at 39. This calculation is made up of 336 hours worked by covered employees over this period, at a contribution rate of $0.30 or $0.31 depending on the month. *Id.* For May 2022, Plaintiffs calculated the contributions due to the JATC in the jurisdiction of Local 8 Illinois at a contribution rate of $0.31 per hour, totaling $4.34 of contributions due to JATC for that month. *Id.* But according to the Settlement Sheet for May 2022, the contribution rate was $0.30 per hour, totaling only $4.20 due to JATC. *See* ECF No. 12-1 at 18. As such, there is a $0.14 difference between the total amount Plaintiff suggests was unpaid for the months April 2022 through November 2022—$195,088.30, *see* ECF No. 12 at 3—and the undersigned's calculation—$195,088.16. This miscalculation accounts for the difference between the $44,664.37 requested, *see id.* at 4, and the undersigned's calculation of $44,664.06.

This miscalculation also impacts the total award of damages. Plaintiff has alleged it is owed $179, 810.61, but the undersigned calculated Plaintiff is owed $179,810.30. The undersigned attributes $0.14 of the $0.31 difference to the miscalculation above. The remaining difference appears to be the result of rounding allocations. *See* ECF No. 12 at 3 n.1; *id.* at 4 n.3; *id.* at 5 n.5.

[7] The $0.08 difference between Plaintiff's calculation chart, *see* ECF No. 12 at 5, and the $118,155.81 is due to rounding up certain contributions for this period by less than $0.01. *Id.* at 5 n.5. The undersigned utilized similar rounding in its independent calculation.

[8] This calculation of liquidated damages does not account for unpaid contributions from April 2022 through November 2022 because the liquidated damages covering that period are accounted for in the MOUs between the parties. *See* ECF No. 12 at 3. Specifically, for unpaid contributions from July 2022 through November 2022, Plaintiff and Defendant agreed Plaintiff was due "reduced liquidated damages totaling $19,508.77." *Id.* This reduced sum of liquidated damages is all Plaintiff requests as to the unpaid contributions from July 2022 through November 2022 and is accounted for in the $44,664.06 due for that period. *Id.*

to the December 2023 MOU.  *See* ECF No. 8-1 at 18.  The undersigned notes that Plaintiff has not provided a formula for calculating the total amount of interest it may be due up to judgment.  *See, e.g.*, *Crabtree v. Island Breeze Marine, Inc.*, No. 18-cv-1054, 2019 WL 2569662, at *5 (D.D.C. June 21, 2019) (noting that the court was able to calculate interest when the plaintiff identified a daily interest, which approximated the annual rate of 9% divided by 365 days per year).  But it appears from the pleadings that Plaintiff requests interest only through December 12, 2023.[9]  ECF No. 12 at 3 n.2.  For this reason, although a specific formula for calculating interest has not been provided, the undersigned recommends rewarding the full amount of interest requested based on the December 2023 MOU and the charts provided by Plaintiff, which break down the interest due per fund per month.  *See* ECF No. 8-2 at 33 (Defendant acknowledging that Plaintiff is owed $3,359.27 on unpaid contributions running to December 2023); ECF No. 12-2 at 52–77 (charts detailing interest due per fund per month).

As such, the undersigned recommends the Court find that Plaintiffs have provided sufficient evidence to permit the Court to determine that Defendant owes $118,155.81 in unpaid contributions for the months of July 2023 through October 2023.  ECF No. 8-2 at 32.  The undersigned recommends the Court find that Plaintiffs are entitled to liquidated damages accounting for 20% of delinquent contributions totaling $23,631.16.  *Id.*  The undersigned recommends the Court award interest on the unpaid contributions in the amount of $3,359.27.  *Id.*  Further, Plaintiff has established that it is entitled to $44,664.06 made up of outstanding installment payments established in the July 2023 MOU.  *Id.*  Considering all unpaid contributions, as well as interest and liquidated damages, minus a $10,000.00 installment payment credited to Defendant, *see* ECF No.

---

[9] The undersigned notes that Plaintiff is entitled to interest on unpaid contributions up to the date of judgment.  *See* ECF No. 8-1 at 18.  In fact, Plaintiff asks for relief including interest calculated to the date of judgment in its Complaint.  *See* ECF No. 1 at 9.  It is unclear why Plaintiff now seeks interest only up to December 2023.

1 at 6, Plaintiff has established that is it entitled to a total of $179,810.30 for Defendant's failure to make timely contributions.

### D.      Plaintiff is Entitled to $4,640.50 in Attorneys' Fees and Costs.

Plaintiff is also entitled to payment of the attorney's fees and costs incurred in connection with this case. The Collective Bargaining Agreement provides that if the employer fails to make required contributions the Trustees "are authorized and empowered . . . [t]o impose and receive from such Employer the attorney's fees and costs incurred by the Fund in pursuing the delinquency." ECF No. 8-2 at 18–19. This authorization is reiterated in the parties' December 2023 MOU. *See id.* at 35 (noting that the Funds are entitled to recover "all attorney's fees incurred" in bringing an action for default). Moreover, ERISA requires a court to award "reasonable attorney's fees and costs of the action, to be paid by the defendant" in any action to recover delinquent contributions. 29 U.S.C. § 1132(g)(2)(D); *see also Smith & Rogers Constr.*, 201 F. Supp. 3d at 148–49.

Plaintiff's supporting documents, appended to the motion for default judgment, include a declaration from its attorney, Charles W. Gilligan, and his firm's billing records. ECF No. 8-2 at 38–41. Those documents establish that the firm O'Donoghue & O'Donoghue LLP expended 11.1 hours on this case, generating fees totaling $3,940.50. *Id.* at 38–39. The attorneys who performed work for this case were Charles W. Gilligan, with nearly 40 years of experience, and Daniel Keenan, with eight years of experience. *Id.* at 38. Both charged Plaintiff a billing rate of $355.00 per hour. *Id.* at 39. Gilligan asserts that rate is "below the usual and customary fee charged for this type of work." *Id.* It is also well below the market rates set forth in both the so-called LSI *Laffey* Matrix and the so-called Fitzpatrick Matrix for work performed from April 2024 to August 2024,

*see id.*, by lawyers with equivalent levels of experience.[10] Specifically, the LSI *Laffey* Matrix reflects rates from $1,057 to $1,141 per hour for an attorney with 20 or more years of experience and $777 to $839 per hour for an attorney with eight to ten years of experience. *See* Laffey Matrix, *available at* https://perma.cc/J9LD-PAEB. The Fitzpatrick Matrix reflects rates of $864 per hour for attorneys with 35 or more years of experience and $640 for an attorney with eight years of experience. *See* Fitzpatrick Matrix—2013–2024, *available at* https://perma.cc/MJM2-6R46.

Notably, courts have approved comparable or higher hourly rates in similar cases. *See, e.g.*, *Overcash Pipeline*, 2021 WL 6753416, at *7 (approving $310 hourly rate for work in an ERISA default case performed in 2020 and 2021); *Smith & Rogers Constr.*, 201 F. Supp. 3d at 149 (approving $615 hourly rate for experienced attorney in an ERISA default case for work performed in 2015 and 2016); *AMF Mech. Corp.*, 326 F.R.D. at 15 n.3 (approving $290 hourly rate for work in an ERISA default case performed in 2017). The undersigned therefore finds Plaintiff's attorney's fees in the amount of $3,940.50 to be reasonable.

---

[10] As the undersigned has explained elsewhere, the original *Laffey* Matrix was created decades ago "using rates charged by litigators who practice complex federal litigation in D.C. to guide future compensation for such litigation." *SEIU Nat'l Pension Fund v. Palisades Operations, LLC*, No. 17-cv-1664, 2018 WL 6790314, at *3 n.3 (D.D.C. Dec. 21, 2018) (citing *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 372 (D.D.C. 1983)), *report and recommendation adopted*, 2019 WL 211391 (D.D.C. Jan. 16, 2019). A competing matrix, referred to as the "LSI *Laffey* Matrix," is still in use and bases its updates on the Legal Services Index of the Bureau of Labor Statistics. *Id.* A former matrix, referred to as the "USAO Matrix," was maintained by the U.S. Attorney's Office for the District of Columbia and used "a survey of the average hourly rates reported in 2011 for the D.C. metropolitan area that were adjusted for inflation with the Producer Price Index-Office of Lawyers [ ] index." *Id.* "LSI *Laffey* Matrix rates are significantly higher than . . . USAO Matrix rates." *Id.*

As of 2022, however, the U.S. Attorney's Office ceased updating the USAO Matrix, and now utilizes a matrix it refers to as the "Fitzpatrick Matrix," named after the law professor commissioned to create it. *See* U.S. Attorney's Office for the District of Columbia, "Attorney's Fees," https://www.justice.gov/usao-dc/civil-division. According to Professor Fitzpatrick, the matrix was created "[b]y assembling data from a substantial number of cases and legal professionals involving a variety of complex litigation contexts, all litigated in the United States District Court for the District of Columbia." *See* U.S. Attorney's Office for the District of Columbia Declaration of Brian T. Fitzpatrick, https://www.justice.gov/usao-dc/page/file/1504381/download; *see also Vollmann v. Dep't of Just.*, No. 12-cv-939, 2022 WL 1124814, at *6 n.4 (D.D.C. Apr. 14, 2022) ("The USAO's version of the *Laffey* Matrix—called the Fitzpatrick Matrix—is based on data for all types of lawyers from the entire metropolitan area."). As with the LSI *Laffey* Matrix, the Fitzpatrick Matrix "operates along two axes, one corresponding to the year in which the work was completed and the other corresponding to the experience of the attorney who completed the work." *Vollmann*, 2022 WL 1124814, at *7 n.5.

Additionally, Plaintiff incurred $700.00 in legal costs. ECF No. 8-2 at 39. Plaintiff provided a copy of the notice of electronic filing, which shows that a $405.00 fee was assessed for filing the complaint online. *Id.* at 43. It also provided a copy of an invoice from Priority+ Legal Services, Inc., for $295.00 for out of state process service. *Id.* at 45. "Plaintiffs are entitled to recover court fees" in ERISA default judgment actions, and the undersigned finds Plaintiff's legal costs of $700.00 to be reasonable. *Overcash Pipeline*, 2021 WL 6753416, at *8 (awarding costs totaling $615.00 comprising filing fees and fees for service of process); *see also Bricklayers & Trowel Trads Int'l Pension Fund v. Barron*, 317 F. Supp. 3d 157, 162 (D.D.C. 2018) (awarding costs totaling $585.00 comprising filing fees and fees for service of process).

### E.  Total Damages

In conclusion, Plaintiff is entitled to a judgment amount accounting for both damages arising from Defendant's failure to make required contributions, totaling $179,810.30, and attorney's fees and costs, totaling $4,640.50. Together, Plaintiff is entitled to a $184,450.80 judgment against Defendant.

### F.  Plaintiff is Entitled to an Equitable Remedy in the Form of an Order requiring Defendant to Submit all Remittance Reports and Contributions Owed from March 2024 to July 2024.[11]

As pleaded in the complaint and taken as true on this Motion for Default Judgment, *see ABC Window Cleaning Co.*, 278 F. Supp. 3d at 458, Defendant has failed to submit remittance reports and contributions for work performed under the Collective Bargaining Agreement since December 2023. ECF No. 1 at 7, 17. Accordingly, Plaintiff requests equitable relief consisting of

---

[11] It is unclear from the record why Plaintiff seeks remittance reports and contributions owed to them only for the months from March to July 2024, *see* ECF No. 8-1 at 23, when Plaintiff alleges in its Complaint that Defendant has not submitted remittance reports or made contributions since December 2023, *see* ECF No. 1 at 8. Plaintiffs may attempt to fix such discrepancy in a written objection pursuant to Local Rule 72.3(b) of the United States District Court for the District of Columbia. LCvR 72.3(b).

16

an Order requiring Defendants to submit all remittance reports and contributions for work performed from March 2024 to July 2024. *See* ECF No. 8-1 at 23; ECF No. 1 at 6–7. Plaintiff argues that other judges in this circuit have granted similar equitable relief in cases in which employers failed to self-report to benefit funds the number of hours paid to their employees. ECF No 8-1 at 23–24 (citing *Int'l Painters & Allied Trades Indus. Pension Fund v. LaSalle Glass & Mirror Co.*, 267 F.R.D. 430, 435 (D.D.C. 2010); *Iron Workers Nat'l Pension Plan v. Samuel Grossi & Sons, Inc.*, No. 20-cv-1204, 2020 WL 6682678, at *3 (D.D.C. Nov. 12, 2020)). Alternatively, Plaintiff suggests that the Court could consider this as a request for an injunction, which Plaintiff argues it is entitled to under the standard in *Winter v. NRDC*, 555 U.S. 7 (2008).[12] *Id.* at 25. Once Defendant complies with such an order, Plaintiff will know whether contributions are required for the months outlined, and if Defendant fails to voluntarily pay such contributions, Plaintiff intends to bring a separate collections action to address the matter. *Id.* at 28–29.

ERISA authorizes the court to grant "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E); *see, e.g.*, *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 69 (granting injunctive relief of submission of remittance reports and contributions where "defendant has not complied with the CBAs of ERISA and has declined to participate in this litigation"); *Int'l*

---

[12] As explained below, the Court may grant the relief requested without engaging in a *Winter* analysis. *See* 29 U.S.C. § 1132(g)(2)(E) (granting court equitable power to craft "appropriate" relief in ERISA cases). In any event, Plaintiff would likely not be entitled to a "preliminary injunction" under the standard in *Winter*. To demonstrate that an injunction is appropriate, a litigant must show: (1) a substantial likelihood of success on the merits; (2) that it would likely suffer irreparable injury if the injunction is not granted; (3) that the balance of equities tips in its favor; and (4) that the public interest would be furthered by the injunction. *Winter*, 555 U.S. at 20. "[T]he movant has the burden to show that all four factors . . . weigh in favor of the injunction." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009). Plaintiff likely fails on the second factor—it argues that it will suffer irreparable damage in the absence of equitable relief because it has an obligation to provide pension credit to covered employees, even when an employer fails to make contributions, as Defendant has here. *See* ECF No. 8-1 at 26. In this Circuit, it is "well settled that economic loss does not, in and of itself, constitute irreparable harm." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Plaintiff has failed to explain how its requirement to provide pension credit despite Defendant's failure to make contributions is anything but economic harm and cites only nonbinding and unpersuasive case law to support its argument. *See* ECF No. 8-1 at 26. Still, the Court is well within its rights to grant the relief requested under the equitable authority extended in ERISA. *See* 29 U.S.C. § 1132(g)(2)(E).

*Painters & Applied Trades Indus. Pension Fund v. Exec. Painting, Inc.*, 719 F. Supp. 2d 45, 53 (D.D.C. 2010) (granting relief including submission of outstanding reports and contributions where "defendant has not complied with the CBAs or ERISA and has remained unresponsive through the judicial process"). As noted by Plaintiff, judges in this district have granted similar requests under the equitable authority in 29 U.S.C. § 1132(g)(2)(E). *See, e.g.*, *LaSalle Glass & Mirror Co.*, 267 F.R.D. at 435 (granting similarly requested injunctive relief upon a finding that the terms of the relevant agreements entitled the plaintiffs to receive monthly remittance reports and corresponding contributions); *Samuel Grossi & Sons, Inc.*, 2020 WL 6682678, at *3 (ordering the defendant to submit fringe benefit reports). Here, Plaintiff has established that is it entitled to monthly remittance reports and contributions under the relevant agreements, *see* ECF No. 8-2 at 4–5, and that such reports and contributions have not been submitted, *id.* at 8–9. As such, the undersigned recommends the Court grant this request for equitable relief pursuant to its discretionary authority under Section 1132(g)(2)(E).

      **G.**    **Plaintiff is Entitled to an Equitable Remedy in the Form of an Order requiring Defendant to Submit to an Accounting.**

Additionally, Plaintiff requests equitable relief in the form of an order requiring Defendant to submit to an audit of its payroll records to determine whether contributions have been made in compliance with Defendant's obligations. ECF No. 8-2 at 29. Such an audit complies with ERISA, which allows a grant of equitable relief, *see* 29 U.S.C. § 1132(g)(2)(E), and the terms of the Collection Procedures, which authorize Plaintiff to conduct audits "to ensure full compliance with employer obligations . . .", ECF No. 8-2 at 14.

Again, ERISA authorizes the Court to grant equitable relief. *See* 29 U.S.C. § 1132(g)(2)(E). Other judges in this district have granted similar audit requests in ERISA cases when default judgment is awarded. *See, e.g.*, *Smith & Rogers Constr.*, 201 F. Supp. 3d at 150

(awarding audit as equitable relief on default judgment); *Boland v. Yoccabel Construction Co.*, 293 F.R.D. 13, 20 (D.D.C. 2013) (same); *Fanning v. Warner Ctr., L.P.*, 999 F. Supp.2d 263, 267 (D.D.C. 2013) (same); *see Carpenters Lab.-Mgmt. Pension Fund v. FreemanCarder LLC*, 498 F. Supp. 2d 237, 242 (D.D.C. 2007) ("[29 U.S.C. § 1132(g)(2)(E)] allows the court to construct appropriate remedies which may 'include an injunction requiring a defendant to permit, and cooperate with, an audit of its books and records.'" (quoting *Mastro Masonry Contractors*, 237 F. Supp. 2d at 70)). This equitable relief is often awarded when the defendant "has demonstrated no willingness to comply with either its contractual or statutory obligations or to participate in the judicial process." *Carpenters Lab.-Mgmt. Pension Fund*, 237 F. Supp. 2d at 70 (citing *Int'l Painters & Allied Trades Industry Pension Fund v. Newburgh*, 468 F. Supp. 2d 215, 218 (D.D.C. 2007)).

Given Atco Masonry's default and the underlying facts of this case, Defendant has neither participated in the judicial process nor complied with its statutory or contractual obligations despite many opportunities to do so. An audit of Defendant's books and records, as described in the parties' agreement, *see* ECF No. 8-2 at 14, is therefore necessary to make an accounting of Defendant's outstanding contributions. The undersigned therefore recommends this request for equitable relief be granted.

## I.   CONCLUSION

Plaintiffs are entitled to damages and the equitable relief requested. Specifically, the undersigned **RECOMMENDS** the Court **GRANT** the motion for default judgment and enter judgment against Defendant Atco Masonry LLC in the amount of $184,450.80, accounting for $179,810.30 in damages owed for Defendant's failure to make required contributions under the Collective Bargaining Agreement and $4,640.50 in attorney's fees and costs. Further, the undersigned **RECOMMENDS** the Court **GRANT** the equitable relief requested and **ORDER**

19

Defendant (1) to submit to an audit of its payroll records; and (2) to submit all outstanding remittance reports and contributions for the months of March 2024 to July 2024.

* * * * *

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendations. *See Thomas v. Arn*, 474 U.S. 140 (1985).

Date:  February 12, 2025

                                                      G. MICHAEL HARVEY
                                                     United States Magistrate Judge